**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| SHAWN JASON | NO. 24-358 |

HODGE, J.                                                                      May 4, 2026

## MEMORANDUM

### I.    INTRODUCTION

Before the Court are Defendant Shawn Jason's ("Defendant") four motions to suppress (the "Motions"): Motion to Suppress Physical Evidence (ECF No. 71); Motion to Suppress Physical Evidence obtained pursuant to a StingRay (ECF No. 73); Motion to Suppress Physical Evidence from a Hotel Room (ECF No. 86); and Reply and Motion to Suppress Evidence pursuant to the Dauphin County Order (ECF No. 105)[1]. Defendant is charged in this case with one count of Hobbs Act robbery, one count of attempted Hobbs Act robbery, one count of using a firearm during a crime of violence, which is the robbery, and one count of felon in possession of a firearm.[2] (*See*

---

[1] ECF No. 105 expands upon Defendant's arguments in ECF No. 73, in which he requested suppression of the evidence obtained as a result of investigators' use of a StingRay. Defendant avers that he first received a copy of the order authorizing use of the StingRay shortly before the Government filed its omnibus response to Defendant's motions to suppress (ECF No. 98). (ECF No. 105 at 4.)

[2] The Court notes that the pending motions and responses were filed prior to the issuance of the Superseding Indictment on February 12, 2026. The "filing of a superseding indictment does not have an effect on the pretrial motions filed on the original indictment 'unless the district court has ruled that the superseding indictment moots the pending motions.'" *United States v. Bazuaye*, No. 03 CR. 12, 2004 WL 784835, at *5 (S.D.N.Y Apr. 12, 2004) (quoting *United States v. Gonzalez*, 897 F.2d 1312, 1317 (5th Cir. 1990)), *aff'd*, 311 F. App'x 382 (2d Cir. 2008); *see also United States v. Harvey*, No. 02:12–CR–113, 2014 WL 657595, at *1 (W.D. Pa. Feb. 20, 2014) ("[B]ecause the Superseding Indictment re-asserts many of the charges in the original Indictment, the Court will resolve all pending motions."). Superseding indictments may impact a court's ability to decide pending pretrial motions where the indictment "change[s] the circumstances surrounding" such

*generally* ECF No. 115.) The charges stem from Defendant's alleged involvement in the robbery and attempted robbery of two Pennsylvania pharmacies: (1) the CVS Pharmacy located in the Glenside section of Abington Township in Montgomery County (the "Abington Robbery") and (2) the CVS Pharmacy located at 334 Baltimore Pike in Springfield Township (the "Springfield Attempted Robbery"). (*Id.* at 1–5.)

In his Motions, Defendant argues that the evidence obtained during the search of Defendant's hotel room and rental car, and the evidence extracted from devices seized therefrom, should be suppressed. Specifically, Defendant argues that the warrants were overly broad and lacking in particularity and/or probable cause, and therefore invalid; that any derivative evidence must be suppressed as fruits of the poisonous tree; and that the good faith exception does not apply. The Government filed an omnibus opposition to ECF Nos. 71, 73, 86, and 87.[3] (ECF No. 98.)

For the reasons that follow, Defendant's Motions are denied.

## II.    BACKGROUND[4]

On February 22, 2024, a man wearing a surgical mask, winter hat, sunglasses, a white quarter-zip fleece jacket, dark pants, and black boots entered the CVS pharmacy in the Glenside section of Abington Township in Montgomery County, Pennsylvania. (ECF No. 98. at 3.) He immediately went to the back of the store, leapt over the partition, and entered the pharmacy area. (*Id.*) The man brandished a black firearm with a silver slide and instructed the pharmacist to show him the safe where the narcotics were stored. (*Id.*) The pharmacist led the man to the safe, where

---

motions. *United States v. Zuniga*, Case No. 2:18-cr-00224, 2020 WL 1516970, at *3 (D.N.J. Mar. 30, 2020). Because the Superseding Indictment does not alter the circumstances surrounding the pending motions, the Court will resolve the motions without requiring Defendant or the Government to re-file.

[3] The Court previously issued an order denying ECF No. 87 (Defendant's Motion to Suppress and Request for a *Franks v. Delaware* Hearing). (ECF No. 114.)

[4] The Court adopts the pagination supplied by the CM/ECF docketing system.

he loaded numerous bottles of oxycodone, Percocet, and methylphenidate into a black duffle bag. (*Id.*) The man  then climbed back over the partition and left the store. (*Id.*) On March 8, 2024, at 1:46 p.m. EST, a Timing Advance Tower Warrant ("geofence warrant") was completed and served to T-Mobile to obtain information to identify the users and/or possessors of cell phones near the scene of the Abington Robbery. (ECF No. 74 at 5.)

On March 8, 2024, a man wearing a gray hooded sweatshirt, black hat, and a blue face mask with white stars on it entered the CVS pharmacy at 702 Naamans Road in Claymont, Delaware. (ECF No. 98 at 3.) The man carried a black Converse duffle bag over his shoulder. (*Id.*) The man jumped over the pharmacy counter and approached the pharmacist with a silver firearm in his hand and demanded oxycodone. (*Id.*) The pharmacist entered the code to the safe and informed the man that the safe was set to a timer and would not immediately open. (*Id.*) The man asked several more times and then eventually left without any proceeds. (*Id.*)

On March 9, 2024, a man wearing a gray hooded sweatshirt, black hat, and a blue face mask with white stars on it, which the Government asserts is the same one worn on March 8, 2024, entered the CVS pharmacy at 334 Baltimore Pike in Springfield Township, Delaware County, Pennsylvania. (*Id.* at 3–4.) The man also carried a black Converse duffle bag. (*Id.* at 4.) The man jumped over the low pharmacy door and brandished a firearm by his side. (*Id.*) Pharmacy employees described the firearm as "silver and black." (ECF No. 99 at 6.) The man demanded 10mg, 20mg, and 30mg Percocets. (ECF No. 98 at 4.) The pharmacist put the code into the safe and informed the man that there was a three-minute delay. (*Id.*) The man waited for approximately thirty seconds before attempting to open the safe himself. (*Id.*) When the safe did not open, he left the store without any proceeds. (*Id.*)

Detective Elizabeth Cartwright ("Det. Cartwright") of the Abington Police Department sought the assistance of other law enforcement agencies to identify the perpetrator of the Abington Robbery. (*Id.*) To that end, Det. Cartwright disseminated information about the nature and circumstances of the Abington Robbery to other law enforcement agencies, as well as descriptions about the clothing the offender wore, the firearm he used, and the vehicle he used to flee the scene. (*Id.*)

Detectives in the City of Philadelphia and Cheltenham Township informed Det. Cartwright of armed robberies in their jurisdictions that were committed in a similar fashion by a similar offender. (*Id.*) While investigators attempted to identify the perpetrator of those crimes, the two attempted robberies discussed above were reported—the incident in Claymont, Delaware on March 8, 2024 (the "Delaware Attempted Robbery") and the Springfield Attempted Robbery on March 9, 2024. (*Id.*) Based on the clothing, offender description, and the temporary license plate affixed to the getaway vehicle, investigators believed the perpetrator of the two attempted robberies was likely the same individual who committed the Abington Robbery. (*Id.* at 4–5.)

On March 18, 2024, Det. Cartwright sought a geofence warrant for the cell towers servicing the areas of the Delaware Attempted Robbery and the Springfield Attempted Robbery (collectively with the March 8, 2024 warrant, "the Geofence Warrants"). (*Id.* at 5.) The data collected from the search warrant identified one device that was present at the scenes of both incidents: an iPhone with International Mobile Equipment Identity ("IMEI") 353834925697265 and International Mobile Subscriber Identity ("IMSI") 310260632294724. (*Id.*) Authorities prepared and served a warrant on T-Mobile for all available records and information associated with that IMSI and IMEI. (ECF No. 76 at 30–31.) T-Mobile provided records which revealed that the IMEI was associated with two phone numbers: 717-857-4110 ("the 717 number") and 267-276-5572 ("the 267

number"). (*Id.* at 31.) The 717 phone number was effective from February 5, 2024 to March 9, 2024. (*Id.*) On March 9, 2024, the data for the 717 number ended, but the same IMEI was used for a different phone number, 267-415-5848, which became effective in the afternoon of the same day. (*Id.*) Law enforcement databases revealed that both the 717-857-4110 and 267-415-5848 phone numbers were associated with Defendant. (*Id.*) As Det. Cartwright developed Defendant as a suspect in the Abington Robbery, she learned that Defendant had an active arrest warrant from Dauphin County, Pennsylvania related to an attempted triple homicide. (ECF No. 98 at 5.)

Det. Cartwright also viewed surveillance video from local establishments near the Abington Robbery, including surveillance video showing Defendant without a mask inside a Wawa convenience store less than a mile from the scene twenty minutes before the robbery was committed. (*Id.*) Det. Cartwright requested the assistance of the Harrisburg Police Department and the United States Marshals Service ("USMS") to locate and apprehend Defendant. (ECF No. 73 at 3; ECF No. 98 at 5.) On April 22, 2024, USMS obtained an order from the Dauphin County Court of Common Pleas (the "Dauphin County Order") to ascertain the location of Defendant's phone via use of a cell-site simulator[5] ("StingRay"). (ECF No. 73 at 3; ECF No. 119 at 3; ECF No. 102-1.) The StingRay indicated that Defendant was located at the Extended Stay Suites at 7890 Penrose Avenue in Philadelphia, in Room 1014 ("Room 1014"). (ECF No. 98 at 6; ECF No. 102-2 at 4.) On April 23, 2024, Det. Cartwright obtained an arrest warrant for Defendant from a Montgomery County Magistrate Judge ("Arrest Warrant"). (ECF No. 98 at 5; ECF No. 102.)

---

[5] "A cell-site simulator . . . is a device that locates cell phones by mimicking the service provider's cell tower (or 'cell site') and forcing cell phones to transmit 'pings' to the simulator. The device then calculates the strength of the 'pings' until the target phone is pinpointed." (ECF No. 98 at 6 n.1 (quoting *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016)).)

On April 24, 2024, Philadelphia Police Department ("PPD") officers and detectives accompanied the USMS to the Extended Stay Suites in Philadelphia, where they arrested Defendant without incident. (ECF No. 71 at 3; ECF No. 98 at 6.) Subsequently, PPD Officers obtained a search warrant for Room 1014 (the "Hotel Room Search Warrant"). (*Id.*; ECF No. 102-2.) While executing the search warrant, law enforcement recovered prescription medication, clothing that appears to be that which was worn by the suspect in the Delaware Attempted Robbery and Springfield Attempted Robbery, and a key to a Nissan Rogue rental car ("Nissan Rogue"), bearing license plate MKZ-5417, that was parked outside the hotel. (ECF No. 71 at 3; ECF No. 98 at 6; ECF No. 102-2 at 2.) Officers also recovered multiple cell phones in Room 1014. (*Id.*) On April 25, 2024, law enforcement obtained a warrant to search the Nissan Rogue (the "Vehicle Search Warrant"). (ECF No. 71 at 4; ECF No. 98 at 6; ECF No. 102-4.) Inside the vehicle, officers recovered a silver and black firearm and clothing that appeared to be what Defendant was wearing in the Wawa surveillance video. (ECF No. 98 at 6; ECF No. 102-4.)

After arresting Defendant and seizing evidence from Room 1014 and the Nissan Rogue, law enforcement obtained warrants to review records stored on electronic devices uncovered in those searches. On June 14, 2024, officers obtained a warrant authorizing the search of the "Black Apple iPhone, with a clear case" (the "iPhone Search Warrant"). (ECF No. 71 at 4; ECF No. 102-3.) The iPhone was forensically examined on June 27, 2024. (ECF No. 71 at 4–5.) On June 25, 2024, investigators obtained a search warrant authorizing acquisition of AT&T records associated with the 717 phone number that was linked to Defendant (the "AT&T Records Warrant"). (ECF No. 71 at 5; ECF No. 76 at 46–65.) The warrant authorized the acquisition of AT&T records including historical cell-site, sector, timing advance, and location data for January 1, 2024 to

February 6, 2024. (ECF No. 71 at 5.) On July 7, 2024, AT&T produced mobility and precision location datasets. (ECF No. 72 at 4.)

### III. PROCEDURAL HISTORY

On October 8, 2024, a grand jury returned a four-count Indictment charging Defendant with (1) robbery which interferes with interstate commerce, in violation of Title 18 U.S.C. § 1951(a) (Count I); (2) attempted robbery which interferes with interstate commerce, also in violation of Title 18 U.S.C. §§ 1951(a) and 2 (Count II); (3) using, carrying, and brandishing a firearm during a crime of violence, in violation of Title 18 U.S.C. § 924(c)(1)(A)(ii) (Count III); and (4) felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g)(1) (Count IV). (ECF No. 1.) Counts I and III relate to the Abington Robbery, Count II relates to the Springfield Attempted Robbery, and Count IV relates to the recovery of the firearm in the Nissan Rogue. (ECF No. 26 at 8.) On February 12, 2026, a grand jury returned a Superseding Indictment bringing the same charges, absent the aiding and abetting charge in violation of 18 U.S.C. § 2. (ECF No. 115.)

On November 4, 2025, Defendant filed the instant motions to suppress various categories of evidence. (ECF Nos. 71, 73, and 86.) On January 16, 2026, the Government filed an omnibus response to ECF Nos. 71, 73, 86, and 87. (ECF No. 98.) On January 26, 2026, Defendant filed a Reply to the Government's Omnibus Response and Motion to Suppress Evidence pursuant to Dauphin County Order. (ECF No. 105.) On February 2, 2026, the Court held a motions hearing regarding the fully briefed motions. (ECF No. 111.) On February 5, 2026, the Court denied Defendant's Motion to Suppress and Request for a *Franks v. Delaware* hearing (ECF No. 87). (ECF No. 114.) On March 20, 2026, the Government filed its Response in Opposition to Defendant's January 26, 2026 Motion to Suppress Evidence (ECF 105). (ECF No. 119.) The Court now addresses the remaining, fully briefed motions.

IV.    **LEGAL STANDARD**

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. Amend. IV. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing . . . reasonableness generally requires the obtaining of a judicial warrant." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). A search warrant is valid if: (1) a neutral and disinterested magistrate issued it; (2) those seeking the warrant demonstrate probable cause to the magistrate; and (3) the warrant particularly describes the things to be seized and the place to be searched. *United States v. Cooper*, No. 22-1510, 2023 WL 3336645, at *4 (3d Cir. May 10, 2023) (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). A magistrate judge may find probable cause for police to seek, obtain, and execute a search warrant when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in [the] particular place" to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit does not have to express certainty about finding evidence in the premises to be searched. Rather, the Third Circuit has said that "an issuing court need only conclude that it would be reasonable to seek the sought-after objects in the place designated in the affidavit; a court need not determine that the evidence is in fact on the premises." *United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005). A court reviewing a magistrate's finding of probable cause need not determine whether probable cause actually existed, but rather whether there was a "substantial basis for finding probable cause." *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993).

Evidence discovered during an unreasonable search or seizure is considered "fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484–85, 488 (1963). A defendant may move to suppress evidence pursuant to Rule 41(h) of the Federal Rules of Criminal Procedure. Once a defendant has established a basis for his motion to suppress, the burden is on the

government to show that the search or seizure was reasonable. See *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). However, "there is no constitutional right to have the evidentiary fruits of an illegal search or seizure suppressed at trial." *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir. 2014). Rather, "[a]pplication of the exclusionary rule is instead limited to those 'unusual cases' in which it may achieve its objective: to appreciably deter governmental violations of the Fourth Amendment." *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)). Thus, where the particular facts of a case indicate that law enforcement officers "acted with an objectively reasonable good-faith belief that their conduct was lawful . . . there is no illicit conduct to deter" and "exclusion cannot pay its way." *Katzin*, 769 F.3d at 171 (citation modified).

## V.    DISCUSSION

### A.  Motions to Suppress Related to Use of the StingRay to Locate Defendant

Defendant moves to suppress all evidence directly or derivatively obtained as a result of law enforcement's use of a StingRay to locate Defendant in Room 1014. (ECF No. 73 at 2–3.) Defendant argues that (1) the use of the StingRay constitutes a Fourth Amendment search requiring a valid warrant and (2) the affidavit in support of the Hotel Room Search Warrant needed to disclose the use of a StingRay for that warrant to be valid. (*Id.*) Defendant also filed a Reply to the Government's Response and Motion to Suppress Evidence pursuant to the Dauphin County Order, seeking to suppress all evidence obtained or derived from the execution of the April 22, 2024 court order that authorized law enforcement's use of the StingRay and collection of certain cell site location information ("CSLI"). (ECF No. 105.) Defendant argues that the type of surveillance authorized in the order constitutes a Fourth Amendment search under *Carpenter v. United States*, 585 U.S. 296 (2018), and investigators were therefore required to establish probable cause and obtain a particularized warrant. (*Id.*) Defendant avers that the Dauphin County Order does not meet the warrant threshold. (*Id*. at 6.)

9

In response to ECF No. 73, the Government asserts that it "obtained a warrant to ascertain the location of the defendant's phone and employed the use of a [StingRay] to more accurately find the defendant." (ECF No. 98 at 5–6.) The Government attaches the Dauphin County Order, which authorized USMS to obtain the following:

> [D]isclosure of Mobile Communications Tracking Information, the installation and use of a Pen Register and Trap and Trace Device and Telecommunications Identification Interception Device, and the disclosure of call detail records detailing incoming and outgoing telephone activity for both the previous telephone activity for both the previous thirty (30) and upcoming sixty (60) day periods on the mobile cellular telephone presently bearing the number 267-276-5572, and/or any replacement telephone number(s) billed to the same subscriber or determined to be used by the same suspect during the period covered by this Court Order.

(ECF No. 102-1 at 4.) The authorization was granted "for a period of sixty (60) days from either the date of installation and/or use or ten (10) days from the date of th[e] Order, whichever is earlier." (*Id.*) In response to ECF No. 105, the Government asserts that the Dauphin County Order was granted after review of an affidavit of probable cause and the requested information was specific and falls within that authorized by the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa. C.S. § 5701 *et seq.*, thereby meeting the warrant requirement. (ECF No. 119 at 1.)

### 1.  *Fourth Amendment Search*

Defendant asserts that the Dauphin County Order authorized "highly sensitive, continuous location and session-level surveillance," constituting a search subject to the Fourth Amendment. (ECF No. 105 at 4.) Defendant argues that the Dauphin County Order differs from a regular pen register order because it authorized the use of a StingRay and the collection of certain historical location data, including "distance or range measurement from the tower (RTT – Range To Tower) and/or Per Call Measurement Data (PCMD), [and] geo-location information and/or Global Positioning System (GPS) coordinates." (*Id.* at 5; ECF No. 102-1 at 5.) Defendant avers that the

collection of this type of information goes beyond the warrantless pen register allowed in *Smith v. Maryland*, 442 U.S. 735 (1979), and instead is more akin to that assessed in *United States v. Jones*, 565 U.S. 400 (2012) and *Carpenter*, wherein the Supreme Court established that an individual maintains a legitimate expectation of privacy that precludes warrantless collection of certain electronic monitoring information. *See Jones*, 565 U.S. at 404 (holding that attaching a GPS tracking device to an individual's vehicle to monitor the vehicle's movements constitutes a Fourth Amendment search); *Carpenter*, 585 U.S. at 315–16 (holding that the Government's collection of historical cell site location information ("CSLI") was a search). The Government does not deny that the use of a StingRay was a search under the Fourth Amendment. The Government asserts that investigators obtained a warrant to ascertain the location of Defendant's phone via use of a StingRay. (ECF No. 98 at 5; ECF No. 119 at 1.) The Court therefore proceeds with an assessment of the validity of the warrant.

### 2. Warrant Requirement

As previously stated, a search warrant complies with the Fourth Amendment if: (1) a neutral and disinterested magistrate issued it; (2) those seeking the warrant demonstrate probable cause to the magistrate; and (3) the warrant particularly describes the things to be seized and the place to be searched. *Cooper*, 2023 WL 3336645, at *4. Defendant does not dispute that the first requirement was met. Thus, the Court does not assess that factor.

Defendant asserts that USMS did not demonstrate probable cause when seeking the Dauphin County Order. Yet, the Dauphin County Order was supported by an affidavit of probable cause submitted by Detective Michael Rudy of the Harrisburg Police Bureau, a Task Force Officer ("TFO") with USMS. (ECF No. 119 at 3; ECF No. 102-1 at 11–16.) The affidavit detailed the probable cause for seeking the order, including identifying Defendant as a fugitive on attempted

homicide charges in Harrisburg, Pennsylvania; describing previous steps TFO Rudy had taken to locate Defendant; explaining TFO Rudy's communications with Det. Cartwright regarding suspicions that Defendant may have committed several robberies in the Philadelphia area; and explaining that investigators had tied Defendant to the specific phone they now sought authorization to track. (*Id.*) The Dauphin County Court therefore had a substantial basis for finding probable cause.

Defendant also asserts that the Dauphin County Order is "overly broad and insufficiently particular" because it authorized "sweeping categories . . . without adequate particularization of targets, selectors, duration, or minimization." (ECF No. 105 at 6.) "The Fourth Amendment specifies only two matters that the warrant must particularly describe: 'the place to be searched' and 'the persons or things to be seized.'" *United States v. Tutis*, 216 F. Supp. 3d 467, 480 (D.N.J. 2016) (quoting *United States v. Grubbs*, 547 U.S. 90, 97 (2006)). As the Government explains in its response, the Dauphin County Order specifically applies to the 267 number associated with Defendant. (ECF No. 119 at 6–7; ECF No. 102-1 at 2–3.) The use of the StingRay was authorized only in relation to that device belonging to Defendant. The particularity requirement was therefore met.

Moreover, the Dauphin County Order explicitly states that the court found "probable cause and individualized suspicion" and the order "is supported by the same quantum of proof that would be required for the issuance of a search warrant." (ECF No. 102-1 at 2–3.); *see also Commonwealth v. Pacheco*, 670 Pa. 25, 68 (Pa. 2021) (concluding that Pa. C.S. § 5773 orders authorizing the collection of real-time CSLI evidence that satisfied the requisites of the Fourth Amendment were "the functional equivalent of a warrant"); *Tutis*, 216 F. Supp. 3d at 483 (similarly concluding that

orders under New Jersey's wiretap act are not "material[ly] differen[t]" from search warrants because both require a showing and finding of probable cause) (quotations omitted).

Defendant further argues that the Dauphin County Order improperly authorized the collection of location information despite being labeled a "pen register/trap-and-trace" order. (ECF No. 105 at 6.) Defendant asserts that the order improperly authorized the use of a "Telecommunications Identification Interception Device [and] packet/header/IP logging" and "compelled provider-initiated location pings yielding GPS/E-911 coordinates." (*Id.*) Defendant's issue is with the type of data collection allowed under this provision of the Pennsylvania's Wiretap Act rather than the warrant itself. In fact, § 5773 also applies to the Government's use of a StingRay. *See Pacheco*, 670 Pa. at 31 n.1 (explaining that, while not referenced in the title of the subchapter, this portion of the Wiretap Act also governs requests for mobile communications tracking information). The Dauphin County Court therefore issued an order within the bounds of the authorizing statute.

Given the above, the Court finds that the Dauphin County Order is functionally equivalent to a valid warrant, *Pachecho*, 670 Pa. at 68, and the Government therefore obtained appropriate authorization for the Fourth Amendment search.

### 3. *Good Faith*

Even if the Dauphin County Order had been issued in error, TFO Rudy and Det. Cartwright acted in objectively reasonable good faith in obtaining the warrant and utilizing the StingRay to identify Defendant's location in Room 1014. The officers were acting pursuant to an order issued by the Dauphin County Court, which generally points toward good faith. *See Caprio v. C.I.R.*, 787 F.2d 109, 110 (3d Cir. 1986) (citing *Leon*, 468 U.S. at 924). Defendant points to no indication of bad faith beyond his conclusion that the Dauphin County Order authorized "expansive, borderless

collection of precision location and IP/session data." (ECF No. 105 at 7.) But, as noted above, the statute at issue does govern mobile location requests like the one at issue here, and courts frequently grant such requests. *See, e.g.*, *United States v. Coles*, 264 F. Supp. 3d 667, 674–75 (M.D. Pa. 2017); *Pacheco*, 670 Pa. at 68. The officers therefore had no reason to suspect they were not acting pursuant to a lawful court order. As such, the good faith exception would apply regardless.

### 4. Request for Franks Hearing

If "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause," the Fourth Amendment requires the contents of the search to be excluded from the record of the case as fruits of the poisonous tree. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). An ex post challenge to the sufficiency of the facts recited in an affidavit supporting a finding of probable cause is called a *Franks* challenge. To obtain a *Franks* hearing, a defendant must show "(1) that a warrant application contained false statements made with reckless disregard for the truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022).

Defendant asserts that a *Franks* hearing is necessary to "explore the government's knowledge and omissions regarding its use of a cell-site simulator and to determine whether the warrant was invalid." (ECF No. 73 at 7.) In the period since this motion was filed, the Government has produced the order authorizing the use of the StingRay. (ECF No. 102-1; ECF No. 105 at 4.) The production of the order and the Court's determination above that the order is functionally equivalent to a valid search warrant renders this request for a *Franks* hearing moot. Defendant again requests a *Franks* hearing in ECF No. 105. Despite Defendant's review of the Dauphin County Order and supporting affidavits, he fails to identify any false statements allegedly made

by law enforcement seeking the order. Because Defendant fails to meet this burden, the request for a *Franks* hearing in ECF No. 105 is denied.

### 5. *Fruit of the Poisonous Tree*

Defendant argues that because the use of a StingRay was unauthorized, all evidence gathered at the hotel and in the Nissan Rogue (as well as all derivative evidence) after Defendant was located by use of the StingRay must be suppressed as fruits of the unlawful search. (ECF No. 73 at 7–8.) However, as detailed above, the Court finds that law enforcement's use of a StingRay was pursuant to a lawful warrant. Thus, Defendant's fruit of the poisonous tree argument is without merit.

### B. Motion to Suppress Evidence Seized from Room 1014

#### 1. *Probable cause*

On April 24, 2024, the same date as Defendant's arrest, officers obtained and executed a warrant from Philadelphia County to search Room 1014. (ECF No. 102-2.) Defendant moves to suppress physical evidence seized from Room 1014 during this search. (ECF No. 71 at 7–8; ECF No. 86.) Defendant asserts that the officers seeking the Hotel Room Search Warrant did not demonstrate probable cause because the warrant affidavit "alleged only that 'his cell phone was actively pinging to Room #1014'" but failed to include further detail supporting officers' conclusion that Defendant was located there. (ECF No. 86 at 4.) Defendant further argues that the warrant relied on stale information that could not support a fair probability of finding evidence. (*Id.* at 5.) In response, the Government contends that the warrant was supported by ample probable cause, including an affidavit averring that active pinging of Defendant's phone confirmed that he was located in Room 1014. (ECF No. 98 at 9–10.) Additionally, the Government asserts that staleness is not at issue because the affidavit in support of the warrant articulated that Defendant

committed or attempted multiple robberies, the most recent of which occurred six weeks prior to his arrest. (*Id.* at 10–11.) The Government maintains there was sufficient reason to believe that evidence associated with those crimes would be located in Room 1014, where Defendant had most recently been staying. (*Id.*)

The Court agrees that the warrant was supported by probable cause. Defendant is correct that probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). The warrant at issue here demonstrates that nexus. The Hotel Room Search Warrant affidavit detailed the robberies and attempted robberies Defendant was suspected of committing, explained that law enforcement had identified Defendant's phone IMSI and IMEI and placed the device at the site of two of those crimes, and noted that Defendant was seen on surveillance video near the site of the other robbery wearing boots similar to those worn by the robber. (ECF No. 102-2 at 4.) Furthermore, the affidavit states that USMS assisted in apprehending Defendant by obtaining Defendant's cell phone information and determining that his cell phone was "actively pinging to Room #1014." (*Id.*) Thus, as in *United States v. Williams*, 974 F.2d 480 (4th Cir. 1992), which Defendant cites in support of his motion, "in the light of all the surrounding circumstances, the likelihood that the [fruits of the crime] would be found in the motel room" of Defendant supported issuance of the search warrant. 974 F.2d at 481; *see also Jones*, 994 F.2d at 1055–56 ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases.").

The gap in time between the Springfield Attempted Robbery (March 9) and the date on which the Hotel Room Search Warrant was issued (April 24) was not so large as to render stale the information supporting the warrant application. Defendant suggests that the passage of time

16

between the Abington Robbery (February 22) and the warrant issue date (April 24) "made the evidence too stale to support probable case." (ECF No. 86 at 5.) But the relevant question is not whether the evidence itself was stale, it is whether the *information upon which the warrant relied* was stale. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993) ("If too old, the information is stale, and probable cause may no longer exist."). Age alone does not determine staleness—rather, the court must also examine the nature of the crime and the type of evidence. *Id.*; *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) ("The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched."). Here, the affidavit asserts that Defendant was engaged in a string of robberies and attempted robberies over a two-week period, the most recent of which occurred six weeks prior to the warrant issue date. (ECF No. 102-2 at 4.) The Government asserts that the affiant sought a warrant to search Room 1014 "as soon as they located [Defendant]." (ECF No. 98 at 10–11.) Thus, law enforcement was not acting on stale information. Based on the most recent information available, law enforcement had reasonable basis to believe that the evidence they sought would be in the location where the suspect was located or resided at that time.

### 2. Particularity

Defendant asserts that the Hotel Room Search Warrant lacked particularity as to the electronic devices to be seized. (ECF No. 71 at 7–8.) Defendant notes that the warrant authorized the seizure of "all phones," without specifying which devices were likely to contain evidence of the specific offenses. (*Id.* at 8.) Here, the Court notes that it does not have the full Hotel Room Search Warrant with all attached exhibits, specifically (as relevant here) Exhibit A. (*See* ECF No. 76 at 3 (directing the magistrate judge to "Exhibit A" for a list of all items officers sought to recover

17

in the search); ECF No. 102-2 at 3.) The Court is therefore unable to address this particularity argument. However, as noted below, the good faith exception applies to the search.

### 3. *Good Faith*

Even if the warrant was defective, the good faith exception would apply. Defendant argues that the affidavit was "bare-bones as to nexus and timeliness." (ECF No. 86 at 6.) The Court is not persuaded by Defendant's argument. The Hotel Room Search Warrant was supported by an affidavit of probable cause that detailed how Defendant had been tied to the crimes being investigated and noted that his phone had been located in the place to be searched. The affiant requested a search warrant to seek specific evidence of those crimes in Room 1014. As such, a reasonable officer could rely in good faith on the warrant issued to search Room 1014 and did so in this instance.

### C. Motion to Suppress Physical Evidence Obtained from Searches Around the Time of Defendant's Arrest

### 1. *Search of the Nissan Rogue*

While searching Room 1014, officers recovered a key fob for a Nissan Rogue owned by the rental car agency SIXT. (ECF No. 98 at 15; ECF No. 71 at 3.) The gray Nissan Rogue bearing Pennsylvania license plate "MKZ-5417" was located near the hotel and towed to the police impound lot the same day. (ECF No. 71 at 3; ECF No. 102-4 at 2.) On April 25, 2024, officers obtained a vehicle search warrant from Philadelphia County, which identified the following items to be searched for and seized:

> Video and/or photographs; forensic evidence including fingerprints, DNA swabs and/or samples; any clothing worn or items possessed by the offender in the investigated robberies; fruits of the investigated crimes; any firearm(s) firearms parts/accessories/ammunition; any cellular phones or similar devices capable of communication with a second device; any electronic device capable of data storage; any data stored inside the Nissan to include: electronic and/or digital location, GPS or navigation, data or evidence of any cellular phones or similarly capable devices that

18

electronically paired or linked to the Nissan: proof of ownership/possession; any other items of evidentiary value related to the investigated robberies[.]

(ECF No. 102-4 at 4.) Officers executed the search warrant the following day, at which time they recovered clothing and an FN .40 caliber pistol with a silver slide and black body. (ECF No. 71 at 4; ECF No. 98 at 6.)

Defendant first argues that the evidence obtained in the search of the Nissan Rogue should be suppressed because the vehicle was towed before a vehicle warrant was issued. (ECF No. 71 at 5–6.) Defendant relies on *Segura v. United States*, 468 U.S. 796 (1984), to argue that a warrantless seizure absent justification of probable cause in reasonable circumstances is unconstitutional and taints any subsequent search. (*Id.* at 6.) But the circumstances in that case were distinct and quite different from the matter before this Court. In *Segura*, the Supreme Court concluded that an "initial warrantless entry and the limited security search [of the petitioners' apartment] were not justified by exigent circumstances and were therefore illegal," rendering evidence obtained in that process subject to exclusion. 468 U.S. at 804. Here, Defendant does not assert that the Nissan Rogue was subject to a warrantless search—rather, he argues that law enforcement seized the vehicle and obtained a warrant two days later. Thus, the circumstances here are more similar to the process that the *Segura* court endorsed when it emphasized that "it [i]s reasonable to seize and impound an automobile on the basis of probable cause, for 'whatever period is necessary to obtain a warrant for the search.'" *Id.* at 807 (quoting *Chambers v. Maroney*, 399 U.S. 42, 50–51 (1970)). Prior to the seizure of the Nissan Rogue, law enforcement had arrested Defendant and searched his hotel room, both actions pursuant to lawful warrants. The search of the hotel room resulted in the discovery of prescription medications that were allegedly related to the crimes that Defendant was suspected of committing, as well as keys to the Nissan Rogue. Thus, officers had probable cause

19

to seize the Nissan Rogue while they obtained a warrant, as it was reasonable to suspect that the vehicle may contain other evidence linked to the crimes being investigated.

Alternatively, Defendant asserts that the evidence recovered from the Nissan Rogue should be suppressed because the Vehicle Search Warrant was overbroad and lacked particularity, and authorized the seizure of electronic devices and data untethered to probable cause. (ECF No. 71 at 6–7.) The Court disagrees. The warrant was supported by an affidavit from PPD Detective Christopher Maitland ("Det. Maitland") that detailed the investigative process to that point, including why Defendant had been identified as a suspect, and explained:

> Based on my training and experience, vehicles in the possession of criminals often contain evidence linking them to crimes they commit. Items such as firearms, clothing, and fruits of the crime are often located in vehicles used or possessed by criminals. Timestamped and/or dated materials (e.g. receipts, records of rental and/or sale, proof of ownership, etc.) can help establish an individual's possession of a vehicle or items inside that vehicle, as well as their location at a particular date and/or time. It is likely that items of evidentiary value linking JASON to these robberies is located inside the recovered Nissan Rogue."

(ECF No. 102-4 at 2–3.) The warrant therefore established a fair probability that contraband or evidence of a crime would be found in the Nissan Rogue, thus there was a substantial basis for a finding of probable cause. *See Jones*, 994 F.2d at 1054.

Furthermore, the warrant stated the particular items to be seized, which included items thought to be associated with the crime (firearms, clothing, fruits of the crime, etc.) and devices and data that might have tied the Defendant and/or vehicle to the robberies being investigated. (ECF No. 102-4 at 4.) Defendant points to the language in the warrant authorizing seizure of "any cellular phones," "any electronic device capable of data storage," and "any data stored in the Nissan," including evidence of devices "paired or linked to the Nissan" as evidence of overbreadth. (ECF No. 71 at 7.) Defendant asserts that the warrant did not include appropriate temporal or content constraints such that officers could identify the items to be seized with reasonable effort.

20

(*Id.* (citing *United States v. Wecht*, 619 F. Supp. 2d 213, 225 (E.D. Pa. 2009)).) In *Wecht*, the court found that a warrant's "directive to seize 'all information and data' contained in the computer's hard drive and associated storage devices was so facially overbroad as to violate the Fourth Amendment's particularity requirement and render all reliance on the warrant objectively unreasonable." 619 F. Supp. 2d at 250 (stating accord with *Lesoine v. Cnty. Of Lackawanna*, 77 F. App'x 74, 79 (3d Cir. 2003)). Here, the warrant authorized the seizure of electronic devices in the vehicle, not all of the data on those devices,[6] so *Wecht* is not directly applicable. Moreover, while the warrant did not establish temporal limitations on the Nissan data to be seized, the data stored on a vehicle does not present the same depth of information that would be collected in a seizure of "all information or data" from a mobile phone or laptop. And while it is possible that some innocuous data associated with devices linked to the Nissan may have been "at least cursorily perused in order to determine whether they are among the [data] to be seized[,] no tenet of the Fourth Amendment prohibits a search merely because it cannot be performed with surgical precision." *United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993). Thus, the warrant met the particularity requirement of the Fourth Amendment.

While the Court finds that the Vehicle Search Warrant met the probable cause and particularity requirements under the Fourth Amendment, it notes that the good faith exception would otherwise apply to prevent suppression of the evidence obtained from the search of the Nissan Rogue. The warrant application was supported by a detailed affidavit setting out probable cause to search a particular place, and the warrant was granted by an impartial magistrate judge. Det. Maitland therefore reasonably relied on the warrant to execute the search.

---

[6] In fact, as Defendant acknowledges (ECF No. 71 at 8–9), investigators later sought a warrant for a search of one of the seized devices (ECF No. 102-3).

### 2. *Forensic search of the iPhone*

Officers seized an iPhone in the search of Room 1014 (ECF No. 102-2 at 2) and subsequently sought a warrant from a magistrate judge in this Court to search the device (ECF No. 102-3). Defendant asserts that the warrant was overbroad because it authorized a "general search of virtually all categories of data" without limitation to time period or specific offenses. (ECF No. 71 at 8–9 (citing *Wecht*, 619 F. Supp. 2d at 225).) Additionally, Defendant argues that the iPhone was seized pursuant to an unlawful warrant—the Hotel Room Search Warrant—and the device-content search should therefore be suppressed as fruit of the poisonous tree. (*Id.* at 9.) In response, the Government contends that the warrant includes content and temporal limitations on the data sought, the warrant was supported by a lengthy affidavit of probable cause that outlined the investigative process and reasons investigators believed the phone would contain relevant evidence, and the good faith exception would preclude suppression if necessary. (ECF No. 98 at 13–15.)

The iPhone Search Warrant meets Fourth Amendment standards of probable cause and particularity. The warrant was supported by an affidavit signed by FBI Special Agent Judd. The affidavit outlined law enforcement's investigation into the crimes Defendant was suspected of committing (ECF No. 102-3 at 5–8, 10–12, 15–16), explained how investigators had used CSLI, among other things, to identify Defendant as a suspect (*id.* at 12–14), and explained that her training and experience told her that those who commit offenses of this nature often use their mobile phones to engage in discussion, coordination, and communications about their activities, such that a search of the device would provide evidence of the "who, what, when, where, and why" of the offenses being investigated (*id.* at 16–18). Additionally, the affidavit identified the device to be searched as one seized during the search of Room 1014. (*Id.* at 16.) Thus, there was a substantial basis for finding probable cause. *Jones*, 994 F.2d at 1054.

Furthermore, contrary to Defendant's assertions, Attachment B to the warrant set out the electronic information stored on the iPhone that was to be forensically searched, which was limited to "[a]ll records on the Device . . . that relate to violations of 18 U.S.C. § 1951 (robbery which interferes with interstate commerce) and 18 U.S.C. § 924(c) (use of a firearm during a crime of violence) and involve SHAWN JASON, and other individuals . . . since January 1, 2024 . . . ." (ECF No. 102-3 at 26.) The warrant was clearly limited to digital evidence on Defendant's device related to the crimes being investigated and to data generated within a designated six-month period,[7] and was not overbroad. *See United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006) (holding that warrants did not violate the particularity principle where they were limited to specifically enumerated federal crimes, the years for which evidence was being sought, and the individuals to whom the records pertained).

Additionally, the Court finds that the good faith exception would preclude suppression of the evidence obtained in the search of the iPhone. Here, investigators sought a warrant from a federal magistrate judge, and that warrant contained a detailed affidavit of probable cause in support of a search request limited with respect to content and time period. Investigators therefore acted in objectively reasonable good faith in executing the warrant after it was granted.

Finally, Defendant asserts that the iPhone content search should be suppressed as fruit of the poisonous tree because the Hotel Room Search Warrant was unlawful. (ECF No. 71 at 9.) Defendant's argument fails because the Court has already determined that the hotel room search was pursuant to a lawful warrant. Section V.B., *supra*. Separately, Defendant argues that he did not consent to the seizure of the iPhone, and that evidence derived from the seizure should

---

[7] The warrant was granted by Hon. José R. Arteaga, United States Magistrate Judge for the Eastern District of Pennsylvania, on June 14, 2024. (ECF No. 102-3 at 3.)

therefore be suppressed. (ECF No. 71 at 10–11.) Yet, as Defendant notes, the iPhone was seized pursuant to the Hotel Room Search Warrant. (*Id.*) Because the Court has determined that this was a lawful warrant, Defendant's argument fails here as well.

### 3. AT&T historical record warrant

On June 25, 2024, a Magistrate Judge in this Court issued the AT&T Records Warrant authorizing the search for information associated with the 717 number linked to Defendant.[8] (ECF No. 76 at 46–65.) The records to be seized included "MOBILITY (with cell location) logs, SMS records with cell-location, Timing Advance Location Information, and Historical Precision Location Information." (ECF No. 71 at 5 (internal quotations omitted).) Defendant asserts that the warrant does not meet Fourth Amendment requirements of probable cause and particularity because it "allowed collection of all [historical cell-site, sector, timing advance, and Historical Precision Location Information] records for over five weeks, resulting in extensive acquisition of mobility logs, SMS with location, and timing/precision datasets, none narrowly tailored to a particular offense or period." (ECF No. 71 at 10.) Defendant also argues that the location data obtained via the warrant is inaccurate. The Government does not directly address Defendant's argument in its response.

There was a substantial basis for the magistrate judge to find probable cause to issue the warrant. The AT&T Records Warrant was supported by an affidavit, again signed by FBI Special Agent Judd, which detailed law enforcement's investigation of Defendant's alleged crimes (ECF No. 76 at 48–50, 52–54, 57–58); explained how investigators had used CSLI, among other things,

---

[8] This is the second warrant for AT&T records issued in this case. The first warrant was issued on June 6, 2024, but was not executed within the fourteen-day period authorized in the warrant. (ECF No. 76 at 47.) FBI Special Agent Judd therefore sought a second, "nearly identical" warrant based on the same probable cause as the original warrant. (*Id.* at 48.)

to identify Defendant as a suspect, including connecting Defendant with the 717 number that is the subject of the warrant request (*id.* at 54–56); and explained that her training and experience told her that AT&T, as a provider of cellular phone services, had technical capabilities allowing them to collect and generate information, including cell-site data and timing advance data pertaining to the subject phone (*id.* at 58–60). The affidavit therefore demonstrated probable cause in support of the warrant.

The warrant also met the particularity requirement of the Fourth Amendment. The affidavit in support of the warrant specified the information to be disclosed by AT&T, which was limited to "information pertaining to [Defendant's Account with the assigned 717 number] . . . for the time period [of] January 1, 2024 to February 6, 2024 . . . ." (*Id.* at 62–64.) The warrant further explained that the type of information to be disclosed included identity information about the account customer/subscriber, call records, and session times and durations (including Internet Protocol ("IP") addresses); and "[a]ll records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account for any voice, text, (including SMS, MMS, RCS), or data transaction . . . ." (*Id.* at 63–64.) Of the information to be disclosed by AT&T, the Government was authorized to seize only that information "that constitutes evidence, fruits, contraband, and instrumentalities of" violations of 18 U.S.C. §§ 1951(a) and 924(c)(1). (*Id.* at 65.) The Court does not ignore the qualifying language that limited the seizure to information directly related to the crimes now charged. *United States v. Tracey*, 597 F.3d 140, 152 n.10 (3d Cir. 2010) (finding that "the affidavit particularly described the items to be searched for and seized" where "the warrant [wa]s limited by the language indicating that the officers were seeking permission to search for and seize evidence of violations of a specific statute's subsection"); *see also United States v. Upham*, 168 F.3d 532, 536–37 n.1

(1st Cir. 1999) (rejecting defendant's challenge on particularity grounds where he suggested that the warrant authorized the seizure of *any* image, but the language explicitly limited seizure to images relevant to the crime charged). Defendant has not argued that law enforcement's search did not comport with the restrictions established in the warrant. As a result, the Court finds that the warrant met the particularity requirement of the Fourth Amendment.

Defendant next argues that the information collected from AT&T is unreliable. (ECF No. 71 at 10.) Defendant argues that "[t]he government's reliance on such data to establish probable cause for later warrants (including device-content searches) is insufficient" and "the resulting evidence is tainted." (*Id.*) As an initial matter, the Court notes that Defendant's concerns regarding the accuracy of the location data collected pursuant to the AT&T Records Warrant go to the weight of the evidence, not the appropriateness of the warrant itself. To the extent that Defendant asks that the Court make a determination on the reliability of the AT&T records, the Court declines to do so. Furthermore, even if the warrant had resulted in the collection of unreliable data as Defendant suggests, Defendant does not identify any other searches that were apparently supported by evidence gathered via execution of the AT&T Records Warrant. In fact, to the Court's knowledge, the AT&T Record Warrant was the last search warrant the Government obtained in this case, so the evidence obtained when the warrant was executed could not have been the basis for any future "tainted" searches.

Additionally, the Court finds that the good faith exception would preclude suppression of the evidence seized as a result of the AT&T Records Warrant. Here again, investigators sought a warrant from a federal magistrate judge, and the warrant was supported by a detailed affidavit establishing probable cause and limiting the information to be seized by law enforcement.

26

Investigators acted in objectively reasonable good faith in executing the warrant after it was granted.

### 4. *Items recovered from the storage unit*

Defendant moves to suppress the items recovered from a search of the Cube Smart storage area pursuant to the search warrant executed on April 26, 2024. (ECF No. 71 at 4, 12; ECF No. 76 at 12–16.) Defendant presents no argument in support of this suppression request related to deficiencies in the warrant or execution of the search; the Government also does not respond to Defendant's single clause requesting suppression of the evidence. (*See* ECF No. 71 at 12).[9] The Court denies the motion to suppress as to the evidence seized from the storage area because Defendant did not provide any basis in law, thereby show cause, to suppress the evidence.

### 5. *Omnibus fruit of the poisonous tree argument*

Defendant also asserts an overarching fruit of the poisonous tree argument to suppress "all evidence obtained directly or indirectly from the unlawful seizure of the Nissan, the overbroad hotel-room device seizure, the general iPhone-content warrant, and the overbroad AT&T/location warrants." (ECF No. 71 at 11.) As detailed above, the Court finds that the Vehicle Search Warrant, Hotel Room Search Warrant, iPhone Search Warrant, and AT&T Records Warrant were all lawful warrants supported by probable cause and sufficiently particular. Thus, Defendant's fruit of the poisonous tree argument is denied.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's motions to suppress—ECF Nos. 71, 73, 86, and 105—are denied. An appropriate Order follows.

---

[9] At the conclusion of his motion to suppress certain physical evidence, Defendant "requests that the Court suppress: . . . (5) the items recovered from the storage area . . . ." (ECF No. 71 at 12.)

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**