## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| **v.** | |
| **SHAWN JASON** | **NO.  24-358** |

**HODGE, J.**                                                          **May 4, 2026**

### MEMORANDUM

### I.    INTRODUCTION

Before the Court is the Government's Motion in Limine (ECF No. 26 (the "Motion")) to admit evidence of an uncharged attempted robbery at a CVS Pharmacy in Claymont, Delaware (the "Delaware Attempted Robbery") that Defendant Shawn Jason ("Defendant") allegedly committed. (ECF No. 26.) Defendant is charged in this case with one count of Hobbs Act robbery, one count of attempted Hobbs Act robbery, one count of using a firearm during a crime of violence, which is the robbery, and one count of felon in possession of a firearm.[1] (*See generally* ECF No. 115.) The charges stem from Defendant's alleged involvement in the robbery and attempted

---

[1] The Court notes that the pending motion and response were filed prior to the issuance of the Superseding Indictment on February 12, 2026. The "filing of a superseding indictment does not have an effect on the pretrial motions filed on the original indictment 'unless the district court has ruled that the superseding indictment moots the pending motions.'" *United States v. Bazuaye*, No. 03 CR. 12, 2004 WL 784835, at *5 (S.D.N.Y Apr. 12, 2004) (quoting *United States v. Gonzalez*, 897 F.2d 1312, 1317 (5th Cir. 1990)), *aff'd*, 311 F. App'x 382 (2d Cir. 2008); *see also United States v. Harvey*, No. 02:12–CR–113, 2014 WL 657595, at *1 (W.D. Pa. Feb. 20, 2014) ("[B]ecause the Superseding Indictment re-asserts many of the charges in the original Indictment, the Court will resolve all pending motions."). Superseding indictments may impact a court's ability to decide pending pretrial motions where the indictment "change[s] the circumstances surrounding" such motions. *United States v. Zuniga*, Case No. 2:18-cr-00224, 2020 WL 1516970, at *3 (D.N.J. Mar. 30, 2020). Because the Superseding Indictment does not alter the circumstances surrounding the pending motions, the Court will resolve the motions without requiring Defendant or the Government to re-file.

robbery of two Pennsylvania pharmacies: (1) the CVS Pharmacy located in the Glenside section of Abington Township in Montgomery County (the "Abington Robbery") and (2) the CVS Pharmacy located at 334 Baltimore Pike in Springfield Township (the "Springfield Attempted Robbery"). (ECF No. 26 at 2–5.)

In its Motion, the Government requests that the Court allow it to use at trial "surveillance video recovered from the interior and exterior of the [Delaware] store, witness testimony, and historical cell site analysis" because they are intrinsic to the crimes charged. (*Id.* at 2, 10.) Alternatively, if this evidence is not found to be intrinsic, the Government asks that it be admitted as extrinsic under Federal Rule of Evidence 404(b)(2). (*Id.* at 14.) Defendant filed a Response in Opposition. (ECF No. 50.)

For reasons that follow, the Government's Motion is granted.

II.    **BACKGROUND**[2]

On February 22, 2024, officers from the Abington Township Police Department responded to the Abington Robbery. It was reported that a black man wearing a white quarter zip jacket, a surgical mask, winter hat, sunglasses, blue jeans, a black glove, and black boots entered the CVS carrying a black Converse "All Star" duffle bag. (ECF No. 26. at 2–3.) He immediately went to the back of the store, leapt over the partition, and entered the pharmacy area. (*Id.* at 2.) The man brandished a black firearm with a silver slide and instructed the pharmacist to show him the safe where the narcotics were stored. (*Id.* at 3.) The pharmacist led the man to the safe, where he loaded numerous bottles of oxycodone, Percocet, and methylphenidate into the duffle bag. (*Id.*) He then climbed back over the partition and left the store through the front door.

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

On March 8, 2024, troopers from the Delaware State Police responded to the Delaware Attempted Robbery. (*Id.* at 3–4.) It was reported that a black man wearing a gray sweatshirt, black hat, and blue bandana with white stars across his face entered the CVS holding a black and silver handgun and carrying a black Converse "All Star" duffle bag. (*Id.* at 4.) The pharmacist reported that the man jumped over the pharmacy counter, approached the pharmacist with the gun in his right hand, and stated "give me the 15s and 30s," which the pharmacist took to mean that he wanted oxycodone. (*Id.*) The pharmacist entered the code to the safe and informed the man that the safe was set to a timer and would not immediately open. (*Id.*) The man asked several more times and then eventually left without any proceeds. (*Id.*)

On March 9, 2024, officers from the Springfield Township Police Department responded to the Springfield Attempted Robbery. (*Id.*) It was reported that a black man wearing a gray sweatshirt, blue bandana with white stars across his face, black hat, and black boots entered the CVS carrying a black Converse "All Star" duffle bag. (*Id.* at 5.) According to witnesses, the man jumped over the low pharmacy door and brandished a firearm by his side. (*Id.* at 4–5.) The man demanded 10mg, 20mg, and 30mg Percocets. (*Id.* at 5.) The pharmacist put the code into the safe and informed the man that there was a three-minute delay. (*Id.*) The man waited for approximately thirty seconds before attempting to open the safe himself. (*Id.*) When the safe did not open, he left the store without any proceeds. (*Id.*)

Surveillance video was recovered from inside and outside the scene of all three incidents. (*Id.*) The same paper license plate was used on two different vehicles leaving the scene of the Abington Robbery and the Springfield Attempted Robbery. (*Id.*) Surveillance video outside of the Delaware Attempted Robbery depicted a black minivan across the street from the scene, but the license plate was not visible. (*Id.*) However, fourteen minutes after the Delaware Attempted

Robbery, a license plate reader identified the same aforementioned license plate on a black Dodge minivan located 3.1 miles from the scene. (*Id.* at 5–6.)

Based on the similar clothing, duffle bag, and modus operandi of the perpetrator in each of the incidents, as well as the identification of the same license plate, detectives executed an "area dump" search warrant for the cell towers servicing the areas of the incidents. (*Id.* at 6.) They determined that one device was present at all three scenes: an iPhone with International Mobile Equipment Identity ("IMEI") 353834925697265 and International Mobile Subscriber Identity ("IMSI") 310260632294724. (*Id.*) A subpoena for T-Mobile revealed that the IMEI was associated with two phone numbers: 717-857-4110 and 267-276-5572. (*Id.*) The 717 number was effective from February 5, 2024 to March 9, 2024. (*Id.*) On March 9, 2024, the data for that phone number ended, but the same IMEI was used for a different phone number, 267-415-5848, which became effective in the afternoon of the same day. (ECF No. 76 at 31.) Law enforcement databases revealed that both the 717-857-4110 and 267-415-5848 phone numbers were associated with Defendant. (*Id.*)

With respect to the Abington Robbery, detectives obtained surveillance video from a Wawa convenience store closest to the scene, which is located approximately 0.9 miles (or a 3-minute drive) from the CVS. (ECF No. 26 at 6.) Prior to the robbery occurring, Defendant was observed inside the Wawa wearing shoes similar to those that the perpetrator in the Abington Robbery wore. (*Id.* at 6–7.) Defendant left the Wawa at 2:01 p.m. (*Id.* at 7.) The subject vehicle—the white GMC Acadia—left the Wawa parking lot at 2:13 p.m. and pulled into the CVS parking lot at 2:18 p.m. (*Id.*) The robbery occurred at approximately 2:44 p.m. (*Id.*)

Based on the foregoing evidence, the Abington Police Department obtained an arrest warrant for Defendant. (*Id.*; ECF No. 102) On April 24, 2024, local detectives and the U.S.

Marshals Service located Defendant at the Extended Stay Suites at 7890 Penrose Avenue in Philadelphia, in Room 1014. (ECF No. 26 at 7; ECF No. 71 at 3; ECF No. 98 at 6.) After Defendant was taken into custody, detectives obtained a search warrant for the search of the hotel room and recovered proceeds from the Abington Robbery, the clothing worn during the incidents, six .40 caliber bullets, three cell phones (including the iPhone with the IMEI identified from the tower dump), and a Nissan car key with a key chain attached, which stated "PA-MKZ-5417, Nissan Rogue, Grey, sixt.com/service." (ECF No. 26 at 7–8.)

The Nissan Rogue was observed in the hotel parking lot. (*Id.* at 8.) Detectives obtained a search warrant for the vehicle and recovered a black and silver firearm with a partially obliterated serial number, mail in Defendant's name, and pants that appear to be the same pants Defendant was wearing in the Wawa surveillance video. (*Id.*) Investigators obtained rental information for the Nissan Rogue, which revealed that Defendant rented the vehicle in his name using his driver's license. (*Id.*)

III.    **PROCEDURAL HISTORY**

On October 8, 2024, a grand jury returned a four-count Indictment charging Defendant with (1) robbery which interferes with interstate commerce, in violation of Title 18 U.S.C. § 1951(a) (Count I); (2) attempted robbery which interferes with interstate commerce, also in violation of Title 18 U.S.C. §§ 1951(a) and 2 (Count II); (3) using, carrying, and brandishing a firearm during a crime of violence, in violation of Title 18 U.S.C. § 924(c)(1)(A)(ii) (Count III); and (4) felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g)(1) (Count IV). (ECF No. 1.) Counts I and III relate to the Abington Robbery, Count II relates to the Springfield Attempted Robbery, and Count IV relates to the recovery of the firearm in the Nissan Rogue. (ECF

No. 26 at 8.) On February 12, 2026, a grand jury returned a Superseding Indictment bringing the same charges, absent the aiding and abetting charge in violation of 18 U.S.C. § 2. (ECF No. 115)

In the instant Motion, the Government seeks to admit (1) surveillance video and the license plate reader from the Delaware Attempted Robbery, (2) witness testimony from the Delaware Attempted Robbery, and (3) cell site evidence from the Delaware Attempted Robbery. (ECF No. 26 at 8–9.) The Government argues that this evidence is intrinsic to the crimes charged, "or alternatively, [] is admissible evidence under Federal Rule of Evidence 404(b)" because it demonstrates proof of Defendant's "identity in the charged offenses" and his "knowledge of, intent, and opportunity to commit the charged crimes." (*Id.* at 9–10.) In response, Defendant contends that the Delaware Attempted Robbery "is not intrinsic to the charged crime," and "[e]ven if the evidence is considered extrinsic, it should not be admitted under Rule 404(b)" because "it would unfairly suggest to the jury that Mr. Jason has a propensity for committing robberies." (ECF No. 50 at 3, 5, 7.)

## IV.    LEGAL STANDARD

Evidence of a criminal defendant's conduct which is not charged in the indictment, including crimes, wrongs or other acts, may be admissible if: (1) the evidence is intrinsic to the charged offense; or (2) the evidence is extrinsic to the charged offense but is offered for a proper purpose under Rule 404(b). *See United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). In the Third Circuit, evidence of uncharged acts is considered intrinsic if it "directly proves" the charged offense, or if it is "performed contemporaneously with the charged crime . . . [and] facilitate[s] the commission of the charged crime." *Id.* at 248, 249.

Uncharged acts which do not come within the definition of intrinsic evidence qualify as extrinsic evidence and must meet the requirements of Rule 404(b) prior to being admitted at

trial. Rule 404(b) bars "the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Rule 404(b) provides, in relevant part:

> (b) Other Crimes, Wrongs, or Acts.
>
>> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
>> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2). As the Third Circuit has explained, "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the non-propensity purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). Given that "Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has the burden of demonstrating [the evidence's] applicability." *Id.* (citation modified). Accordingly, "[a]dmissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction." *Id.* (citing *Huddleston*, 485 U.S. at 691) (the "*Huddleston* test").

Ultimately, the purpose of Rule 404(b) is "simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't

worry overmuch about the strength of the Government's evidence." *Green*, 617 F.3d at 249 (quoting *United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008)).

## V.    DISCUSSION

### A.  Intrinsic or Extrinsic Evidence

The Government seeks to introduce the evidence pertaining to the Delaware Attempted Robbery on the basis that it is intrinsic to all four charges in the Indictment.

The Third Circuit has not adopted a bright line rule for the timing of evidence to be considered intrinsic. In *United States v. Haas*, the indictment alleged that the defendant possessed a gun "on or about March 21, 2003." 184 F. App'x 230, 231 (3d Cir. 2006). The Government sought to introduce evidence that the defendant possessed a gun on March 19, 2003 as intrinsic to his charge under 18 U.S.C. § 922(g), related to the gun he possessed on March 21, 2003. *Id.* at 234. The Third Circuit concluded that this was not intrinsic evidence:

> The charged offense was possession of the gun on the 21st, not the 19th. Whatever probative value the evidence about [the defendant's] activities on the 19th may have had, it did not directly prove that [the defendant] possessed the gun on the 21st. To hold otherwise would be to strip the words "directly prove" of all meaning.

*Id.* For evidence to be considered "intrinsic", the Third Circuit "insist[s] on a significantly closer connection for exemption from [Rule] 404(b)." *Id.* at 234. For example, in *United States v. Elliot*, the Third Circuit held that evidence that the defendant was involved in a shooting just a few minutes before he was found in possession of a gun was intrinsic to a gun charge under 18 U.S.C. § 922(g). 235 F. App'x 879, 881 (3d Cir. 2007); *see also United States v. Harris*, No. CRIM.A. 11-196, 2012 WL 3962651, at *8 (W.D. Pa. Sept. 11, 2012) (holding that under *Haas and Elliot*, a firearm used by the defendant the day before he was found by police to be illegally in possession of ammunition was not intrinsic to a charge under 18 U.S.C. § 922(g)(1)).

8

The Court finds that the evidence pertaining to the Delaware Attempted Robbery is not admissible as intrinsic evidence. In its Motion, the Government asserts that this evidence is intrinsic because "[e]vidence that the defendant attempted to commit another robbery – in the middle of a string of violent robberies or attempted robberies – is direct evidence that he committed the crimes charged in the Indictment." (ECF No. 26 at 10.) However, the Delaware Attempted Robbery occurred fifteen days after the Abington Robbery and one day before the Springfield Attempted Robbery, thus falling outside the parameters set by *Haas* and *Elliot*. While admittedly relatively close in time to the other incidents, the Delaware Attempted Robbery and the evidence surrounding it do not "directly prove" that Defendant robbed or attempted to rob a CVS Pharmacy on either February 22, 2024 or March 9, 2024. *See Harris*, 2012 WL 3962651, at *8. Moreover, the crimes charged are not of the kind the Third Circuit has frequently recognized as those warranting the admission of older other-act evidence to prove that the defendant engaged in a prolonged criminal scheme. *See, e.g.*, *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) (explaining that acts are intrinsic when they directly prove the charged conspiracy); *United States v. Evans*, 571 F. Supp. 3d 368, 374–75 (3d Cir. 2021) (wire fraud).

### B.  Admissibility Under Fed. R. Evid. 404(b)

Having determined that the evidence does not meet the standard for intrinsic evidence, the Court now evaluates the Government's argument that the evidence pertaining to the Delaware Attempted Robbery is extrinsic evidence that is admissible pursuant to Rule 404(b)(2). As noted above, Rule 404(b)(2) allows for the admission of evidence for non-propensity purposes, including to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The Government argues that the evidence related to the Delaware Attempted Robbery satisfies the first step of the *Huddleston* test—that is, the evidence is proffered for a non-

9

propensity purpose—because "[t]he fact that the defendant possessed the same cell phone and firearm in a near identical robbery" provides "powerful evidence to the central issue of the case – identity." (ECF No. 26 at 17–18.) Furthermore, the Government asserts that the evidence is admissible in relation to Defendant's knowledge, intent, motive, and opportunity to commit the charged robberies and use of a firearm. (*Id.* at 17.) The Court agrees with the Government's position.

The Court finds that the Government has established a non-propensity purpose for the admission of the evidence regarding the Delaware Attempted Robbery. Specifically, the evidence serves the purpose of establishing identity and plan. First, the Government describes the firearm in both the Abington Robbery and the Delaware Attempted Robbery as being black and silver.[3] Second, the Government has established the presence of Defendant's cell phone at the scene of all three incidents. Third, the Government has established that in all three incidents, a black man wearing blue jeans, black shoes, and a face covering, and carrying a black Converse "All Star" duffle bag, entered a CVS pharmacy and demanded that the pharmacist hand over narcotics. Collectively, this constitutes evidence of Defendant's identity and common plan under Rule 404(b)(2) (the first step of the *Huddleston* test).

The evidence is also relevant under Rule 401 of the Federal Rules of Evidence (second step of the *Huddleston* test). *See United States v. Brunson*, 516 F. App'x 154, 157–58 (3d Cir. 2013). Next, under the third step of the *Huddleston* test, even where a proper purpose has been established, relevant evidence should be excluded "if its probative value is substantially outweighed by the

---

[3] While the Government's briefing does not describe the color of the firearm in the Springfield Attempted Robbery, the Court notes that the arrest warrant filed as an exhibit in this case states that employees at the Springfield CVS described the weapon as "a silver and black handgun." (ECF No. 99 at 6.)

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The Court is satisfied that the probative value of the evidence regarding the Delaware Attempted Robbery is not substantially outweighed by the danger of unfair prejudice. Lastly, in accordance with the fourth step in the *Huddleston* test, the Court is prepared, if requested, to provide a limiting instruction to the jury to eliminate the risk of any undue prejudice associated with the introduction of the uncharged act.

Accordingly, the Court finds that the Government has satisfied the four-step test in *Huddleston*. The evidence pertaining to the Delaware Attempted Robbery is admissible under Rule 404(b).

## VI.    CONCLUSION

For the foregoing reasons, the Court grants the Government's Motion in Limine (ECF No. 26). An appropriate Order follows.

BY THE COURT:

**/s/ Kelley B. Hodge**

**HODGE, KELLEY B., J.**

11